UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| INTERTEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV853 CDP |
| | ) | |
| G4S COMPLIANCE AND | ) | |
| INVESTIGATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

In October of 1999, plaintiff Intertel Inc., an insurance claims investigation company, entered into a service agreement with Sedgwick Claims Management Services, Inc., an insurance claims administrator, in which Intertel agreed to perform investigations for Sedgwick Claims. Because Intertel could not always handle all of the investigations Sedgwick Claims assigned it, Intertel entered into a separate Vendor Agreement with defendant G4S, which is also an insurance investigation company. Under the Vendor Agreement, Intertel would assign claims investigations to G4S for investigation when the need arose. The Vendor Agreement also contained a non-disclosure clause that prohibited G4s from disclosing confidential information "relating to clients and accounts of" Intertel.

After Intertel encountered financial difficulties, Sedgwick Claims terminated its service agreement with Intertel and entered into a new service agreement with

G4S. Intertel later filed this breach-of-contract complaint against G4S in Missouri state court, claiming that G4S had breached the Vendor Agreement by disclosing confidential information about Intertel to Sedgwick Claims. G4S removed the case based upon the diversity of the parties' citizenship and now moves for summary judgment, contending that (1) the non-disclosure clause did not prohibit it from disclosing information about Intertel, and (2) even if the clause did prohibit such disclosure, there is no evidence to support that claim. I agree with G4S on both points, and I will grant it summary judgment on plaintiff's complaint.

**Background**

Plaintiff Intertel Inc. is an investigation company that performs investigative work for insurance companies and other insured businesses. In October of 1999, Sedgwick Claims and Intertel signed a service agreement under which Intertel would provide Sedgwick Claims with investigative services. In order to handle these investigations, Intertel entered into vendor agreements with several investigative companies throughout the country, including G4S[1] in October of 2000.

The parties' Vendor Agreement, which was drafted by Intertel, provides that the purpose of the Agreement is for G4S to "perform investigative services for

---

[1]The Vendor Agreement was actually entered into by Intertel and MJM Investigations, Inc., which was the predecessor company to G4S. For simplicity, I will refer to MJM as G4S throughout this Memorandum and Order.

INTERTEL" in several states, because Intertel "from-time-to-time receives such requests which it cannot perform." The Vendor Agreement also contains a "non-exclusive" clause, in which the parties agree that G4S may "perform investigative services for other businesses, firms or individuals," and that Intertel may hire other businesses to perform investigative services. Paragraph fourteen, entitled "Prohibited Disclosure of Documents," prohibits G4S from disclosing any information it obtains "on behalf of INTERTEL clients." Specifically, the paragraph provides that all investigative materials including records and notes "relating to the clients and accounts of INTERTEL" are the "exclusive property of INTERTEL and shall not be disseminated to any third parties without the express written consent of INTERTEL." The Vendor Agreement also contains a "Standards of Conduct" section requiring G4S to hold all its assignments from Intertel "in strict confidence." G4S agreed as well that all investigative materials it prepared or obtained while performing investigations for Intertel would remain Intertel's and Intertel's client's property. Finally, the Vendor Agreement's twenty-first paragraph provides that the Agreement, "together with the Exhibits attached hereto and which are considered a part of this Agreement, constitutes the entire Agreement of the parties, and all prior negotiations and representations . . . are merged herein."

Within a year of entering the Vendor Agreement with G4S, Intertel began having financial problems, and Sedgwick Claims terminated its service agreement with Intertel. Sedgwick Claims and G4S then entered into their own service agreement. Intertel filed suit against both Sedgwick Claims and G4S in 2002 in Missouri state court. The case proceeded to trial in state court, but the trial judge granted G4S's motion for a directed verdict after counsel for Intertel finished his opening statement. That holding was overturned on appeal in 2006, and the case was remanded for a new trial. On remand, Intertel voluntarily dismissed its claims against G4S, but later re-filed them. G4S removed the case to this Court in 2009.

During discovery in this federal litigation, Intertel failed to comply with several deadlines, including the deadlines for completing court-ordered mediation and discovery. After Intertel sent G4S discovery requests late in the day on the deadline for completing discovery, G4S moved for a protective order barring any further discovery. Because of Intertel's repeated failure to meet deadlines, I granted G4S's motion and entered the protective order. G4S now moves for summary judgment on Intertel's complaint. Intertel has not filed a brief in opposition, but has filed a statement of controverted facts in response to G4S's motion for summary judgment². Accordingly, the matter is now ready for disposition.

---

²Under Local Rule 4.01 of the Local Rules for the United States District Court for the Eastern District of Missouri, Intertel is not required to file a brief in opposition, and counsel for Intertel indicated to the Court that he purposefully did not file any brief.

**Discussion**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here Intertel. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As the moving party, G4S has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). If G4S meets this burden, Intertel may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In its complaint, Intertel alleged that G4S breached the Vendor Agreement by disclosing Intertel's "confidential information and trade secrets" to Sedgwick Claims. To prove this claim at trial Intertel would have to present evidence showing (1) the existence of an enforceable contract between the parties; (2) the parties' mutual obligations under the contract; (3) G4S's failure to perform its contractual obligations; and (4) Intertel's damage as a result of G4S's failure. *See*

*D.R. Sherry Const., Ltd. v. American Family Mut. Ins. Co.*, No. SC 90442, 2010 WL 2513794, at *3 (Mo. June 15, 2010) (en banc); *McClain v. Papka*, 108 S.W.3d 48, 53 (Mo. Ct. App. 2003). No one disputes the existence of an enforceable contract – the Vendor Agreement, or that Intertel and G4S both had mutual obligations under the Vendor Agreement. Instead, the parties dispute whether the Vendor Agreement prohibited G4S from disclosing confidential information about Intertel's investigative services and techniques.

In support of its claim that G4S beached the Vendor Agreement, Intertel points to the Agreement's non-disclosure clause, entitled "Prohibited Disclosure of Documents." G4S agreed in this clause "not to reveal, copy, summarize or in any other manner use or disclose any information obtained" by G4S "on be behalf of INTERTEL clients." The clause further provides:

> The restriction contained in this paragraph shall not be limited as to time, place, or client. In that connection, [G4S] understands and agrees that all records, notes, files, memoranda, reports, statements, tapes, client lists, financial records, customer lists, client development materials, drawings, pictures, computer information, and all copies thereof, relating to clients and accounts of INTERTEL are confidential information and are trade secrets, . . . and shall remain the exclusive property of INTERTEL and shall not be disseminated to any third parties without the express written consent of INTERTEL.

Intertel clarified in its answers to G4S's interrogatories that G4S breached this clause by disclosing Intertel's "3-CIP program and medical checks" to all of G4S's clients and potential clients, although Intertel also responded that it did not know

the identity of any of these clients. By contrast, G4S contends that the non-disclosure clause did not prohibit it from disclosing Intertel's 3-CIP program and medical checks, because these items do not qualify as "confidential information and trade secrets" as intended by the parties. Specifically, G4S claims that the non-disclosure clause only prohibited it from disclosing confidential information relating to Intertel's clients and accounts, not confidential information about Intertel itself. G4S also maintains that, even if the clause prohibited it from disclosing the 3-CIP program and medical checks, Intertel can present no evidence that G4S disclosed that information to anyone.

Under Missouri law, it is well established that the primary rule of contract interpretation is "to ascertain the intent of the parties and then give effect to that intent." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 395 (Mo. 2001) (en banc). When no ambiguities exist in a contract, a court must determine the parties' intent from the contract alone, giving the contract's terms their plain and ordinary meaning. *Id.* If, however, a contract is "fairly open to two or more interpretations, it will be construed against the party who prepared the contract." *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. 2005) (en banc). The Vendor Agreement in this case contained a merger clause providing that the "Agreement, together with the Exhibits attached . . . constitutes the entire Agreement of the parties, and all prior negotiations and representations, whether oral or written, are merged herein."

The existence of such a merger clause is "a strong indication on the face of the contract that the writing is intended to be complete." *CIT Group Sales/Sales Financing v. Lark*, 906 S.W.2d 865, 868 (Mo. Ct. App. 1995).

Giving the non-disclosure clause's terms their plain and ordinary meaning, as I must, I conclude that the clause prohibited defendant from revealing information about Intertel's clients and client accounts, not information about Intertel itself. In particular, the clause defines Intertel's "confidential information" and "trade secrets" as all "records, notes . . . client lists, . . . customer lists, client development materials, . . . and all copies thereof, *relating to the clients and accounts* of INTERTEL." (emphasis added). The phrase, "relating to clients and accounts of" Intertel, by the plain meaning of its terms, limits the types of protected confidential information and trades secrets to information about Intertel's clients and the investigations undertaken by G4S on behalf of Intertel's clients. Intertel, which drafted the Agreement, did not include in this definition information relating to Intertel or its unique investigative services, including its 3-CIP program or medical checks. Moreover, the types of information Intertel listed as confidential and trade secrets – client lists, customer lists, and client development materials – reveal, by the plain and ordinary meanings of their terms, that Intertel only intended this clause to prohibit G4S from disclosing information about Intertel's clients. Even if the clause were ambiguous and open to the interpretation that it prohibits G4S from

revealing confidential information about Intertel, Intertel drafted the Agreement, so I must construe the clause against Intertel. *See Trimble*, 167 S.W.3d at 714.

Other parts of the Vendor Agreement support this interpretation. As described above, the Vendor Agreement provides that G4S would perform claims investigations for Intertel upon behalf of Intertel's clients. To define the standards of conduct that G4S was required to observe when investigating these claims, the Vendor Agreement includes a "Standards of Conduct" section, providing that G4S is required to keep all of its assignments "in strict confidence." Part of this confidentiality requirement included G4S's agreement not to reveal the assignments "to anyone outside of authorized representatives of INTERTEL and INTERTEL'S clients for whom the work is being performed." Similarly, Intertel and G4S agreed that all "investigati[ve] reports, photographs, videotapes, and audiotapes prepared or obtained by [G4S] shall be the exclusive property of INTERTEL and its client, during and at the conclusion of the particular assignment." Consistent with this clause, G4S was required to send all of its investigation materials such as statements, photographs, and videotapes to Intertel and its client at the end of its investigation.

Together with the non-disclosure clause, these clauses reveal that the parties intended that G4S would keep confidential all information relating to Intertel's clients and the results of its investigations for Intertel's clients. This intent is

enshrined in several places throughout the Vendor Agreement. Meanwhile, the Vendor Agreement is completely silent about Intertel's confidential investigation techniques and methods. Nowhere in any of these clauses – or in any other part of the Vendor Agreement – did the parties agree to prohibit G4S from disclosing anything about Intertel or its investigation services. Indeed, the parties did not specify in any clause of the Vendor Agreement what form of investigation G4S should use. Intertel did not, for example, require G4S to use its 3-CIP program or perform medical checks when it investigated claims assigned by Intertel. Because the Vendor Agreement by its plain terms only prohibited disclosure of confidential information relating to Intertel's clients and the results of G4S's investigations for Intertel's clients, I agree with G4S that it would not have breached the Vendor Agreement by disclosing any confidential information about Intertel or Intertel's investigation techniques, including the 3-CIP program and medical checks.

But even if the non-disclosure clause did prohibit defendant from disclosing information about Intertel, Intertel has failed to produce any evidence supporting its claim that defendant disclosed such information. In opposition to defendant's motion for summary judgment, Intertel has submitted a statement of controverted facts that leaves unopposed most of G4S's statements of uncontroverted fact. Instead, Intertel contends that Sedgwick Claims breached its contract with Intertel by withholding payments to Intertel and by terminating the contract without proper

notice. Even if Sedgwick Claims had breached its contract with Intertel, however, that would not support Intertel's claim that G4S disclosed information about Intertel's 3-CIP program and medical checks.

Moreover, the evidence Intertel produces – affidavits from Intertel's president, a video created by Intertel detailing its 3-CIP program, and a copy of the trademark issued for its 3-CIP program – fails to support its claims. In his affidavit, Intertel's president avers that he created the 3-CIP program along with a video explaining the program, and that he explained the 3-CIP program and showed his video to G4S management after the parties entered the Vendor Agreement. But the president does not aver that any of this information was confidential, or that any G4S manager disclosed any of this information. Intertel's president also avers that Intertel held a trademark for the 3-CIP program, and Intertel produces a copy of its trademark for the program. However, the fact that Intertel has a trademark for its 3-CIP program does not support its claim that G4S disclosed confidential information about that program to third parties. Indeed, the fact that Intertel's president states in his affidavit that he showed the 3-CIP video to several parties other than G4S managers belies Intertel's claim that its 3-CIP program was confidential. The video itself does not support Intertel's claims; nowhere in the video does Intertel's president claim that the 3-CIP program is confidential. If Intertel believed G4S was unlawfully using its trademark, it could have filed suit for trademark infringement.

Instead, Intertel has brought this breach-of-contract claim, alleging that G4S violated the Vendor Agreement by disclosing Intertel's confidential information. None of Intertel's evidence supports that allegation.

In contrast, G4S has produced evidence refuting Intertel's claims, including Intertel's responses to G4S's interrogatories and requests for production. Intertel averred in its answers to the interrogatories that G4S disclosed confidential information about its 3-CIP program and medical checks to all of G4S's clients and potential clients, although Intertel did not know the identity of any of those individuals, the method by which G4S disclosed this information, or the identity of the person who disclosed the information. Although these answers were given under oath by Intertel's president and I must view this evidence in the light most favorable to Intertel, *see* Fed. R. Civ. P. 33 & *Matsushita*, 475 U.S. at 587, this evidence fails as a matter of law to support Intertel's claim. The parties have been litigating this issue in some form for eight years, and Intertel had several months to do discovery to support its claims even after the case was removed from state court. Intertel's failure to identify even one person to whom G4S disclosed Intertel's confidential information is fatal to its claim that G4S did disclose any confidential information.

Finally, Intertel submitted G4S's advertising information to support its allegation that G4S disclosed its medical checks and 3-CIP program. But nowhere

in this advertisement does G4S even mention the 3-CIP program. The advertisement does mention that G4S performs hospital, pharmacy, and chiropractic/dental checks, but nothing in the advertisement suggests that G4S obtained confidential information about these investigative services from Intertel. Intertel makes no effort to describe what the "medical checks" are that were allegedly disclosed, and nothing in this advertisement supports that claim. In the face of Intertel's complete failure to support its claims with any evidence, I must grant summary judgment to G4S.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#39] is granted, and plaintiff's complaint is dismissed.

A separate Judgment will be entered this same day in accordance with this Memorandum & Opinion.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of August, 2010.